**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

**DAVID LACKEY**, *individually and on behalf of all others similarly situated*,

Plaintiff,

**v.**

**SABER HEALTHCARE HOLDINGS, LLC, *doing business as* SABER HEALTHCARE GROUP**,

Defendant.

Case No. 1:26-cv-02546

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff David Lackey ("Plaintiff"), individually and on behalf of the putative Class of similarly situated persons defined below, alleges the following against Defendant Saber Healthcare Holdings, LLC, doing business as Saber Healthcare Group ("Defendant" or "Saber"):

## SUMMARY OF THE CASE

1. This action arises from Defendant's failure to secure the personally identifiable information ("PII")[1] and protected health information ("PHI")[2] (collectively, "Private

[1] The Federal Trade Commission ("FTC") defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

[2] Under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d, *et seq.*, and its implementing regulations ("HIPAA"), "protected health information" is defined as individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. 45 C.F.R. § 160.103 *Protected health information*. "Business Health information such as diagnoses, treatment information, medical test results, and prescription information are considered protected health information under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information.

Information") of Plaintiff and the members of the proposed Class, who are current and former patients of Defendant.

2. Defendant is an Ohio-based senior care and healthcare services provider with care communities in five states.

3. As a condition of receiving services from Defendant, Plaintiff and Class Members were required to provide Defendant with their sensitive and confidential Private Information. Defendant had a resulting duty to ensure that the Private Information it solicited and stored was securely maintained and safeguarded from unauthorized disclosure.

4. On July 27, 2026, Defendant became aware of unauthorized activity in its IT Network (the "Data Breach") and launched an investigation to determine the nature and scope of the Data Breach.[3]

5. Following its investigation, Defendant confirmed that certain information may have been accessed by an unauthorized individual in connection with this Data Breach, and then conducted a comprehensive review of the potentially affected information.[4]

6. On August 19, 2026, Defendant completed its review and determined that the following types of Private Information were compromised as a result of the Data Breach: name, date of birth, driver's license/state issued identification number, health insurance information, medical information, financial account information, passport number, and/or Social Security number.[5]

---

U.S. Dep't for Health & Hum. Servs. ("HHS"), *Summary of the HIPAA Privacy Rule*, https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html (last visited Sept. 29, 2026).

[3] Saber, *Notice of Data Incident* (Sep. 25, 2026), https://saberhealth.com/incident (last visited Sept. 29, 2026).

[4] *Id.*

[5] *Id.*

7. As a result of the Data Breach, which Defendant failed to prevent, the Private Information of Plaintiff and the proposed Class Members was stolen.

8. Instead, Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement reasonable measures to safeguard its current and former patients' Private Information and by failing to take necessary steps to prevent unauthorized disclosure of that information. Defendant's woefully inadequate data security measures made the Data Breach a foreseeable, and even likely, consequence of its negligence.

9. As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered actual and present injuries, including but not limited to: (a) present, certainly impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; (b) diminution of value of their Private Information; (c) loss of benefit of the bargain (price premium damages); (d) loss of value of privacy and confidentiality of the stolen Private Information; (e) illegal sales of the compromised Private Information; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance costs; (h) "out of pocket" costs incurred due to actual identity theft; (i) credit freezes/unfreezes; (j) expense and time spent on initiating fraud alerts and contacting third parties; (k) decreased credit scores; (l) lost work time; and (m) anxiety, annoyance, and nuisance; (n) continued risk to their Private Information, which remains in Defendant's possession and subject to further breach so long as Defendant fails to undertake adequate measures to protect it.

10. Indeed, Plaintiff and Class Members would not have provided their valuable Private Information had they known Defendant would make their Private Information internet-accessible,

fail to encrypt personal and sensitive data elements, and fail to delete the Private Information it no longer had reason to maintain.

11. Through this lawsuit, Plaintiff seeks to hold Defendant responsible for the injuries it inflicted on Plaintiff and Class Members due to its impermissibly inadequate data security measures, and to seek injunctive relief to ensure the implementation of security measures to protect the Private Information that remains in Defendant's possession.

12. The exposure of one's Private Information to cybercriminals is a bell that cannot be un-rung. Before this Data Breach, Plaintiff's and the Class's Private Information was exactly that—private. Not anymore. Now, their Private Information is forever exposed and unsecure.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one Class Member is diverse from Defendant, and there are over 100 putative Class Members.

14. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this State, regularly conducts business in this State, and thus has sufficient minimum contacts in this State.

15. Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

16. Plaintiff is, and at all relevant times has been, a resident and citizen of North Carolina, where he intends to remain.

17. Defendant is a limited liability company formed under the laws of Ohio that maintains its principal place of business at 23700 Commerce Park Road, Beachwood, Ohio, 44122, and does business under the name of Saber Healthcare Group.

## FACTUAL ALLEGATIONS

### A. Background on Defendant

18. Defendant is an Ohio-based senior care and healthcare services provider with care communities in five states.

19. Upon information and belief, Defendant made promises and representations to individuals', including Plaintiff and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.

20. Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

21. As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff's and the Class Members' Private Information from disclosure to third parties.

### B. The Data Breach

27. On July 27, 2026, Defendant became aware of unauthorized activity in its IT Network and launched an investigation to determine the nature and scope of the Data Breach.[6]

28. On August 19, 2026, Defendant completed its review and determined that the

[6] *Id.*

following types of Private Information were compromised as a result of the Data Breach: name, date of birth, driver's license/state issued identification number, health insurance information, medical information, financial account information, passport number, and/or Social Security number.[7]

29. Defendant failed to take precautions designed to keep individuals' Private Information secure. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive Private Information it was maintaining for Plaintiff and Class Members, such as encrypting the information or deleting it when it is no longer needed, causing cybercriminals to target, access, and steal Plaintiff's and Class Members' Private Information in the Data Breach.

30. While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

31. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**C. The Value of Private Information**

32. In April 2020, ZDNet reported that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for complaints as revenge against those who refuse to pay."[8]

---

[7] *Id.*

[8] Catalin Cimpanu, *Ransomware mentioned in 1,000+ SEC filings over the past year*, ZDNET (Apr. 30, 2025), https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited Sept. 29, 2026).

33. In September 2020, the United States Cybersecurity and Infrastructure Security Agency ("CISA") published online a *Ransomware Guide* advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[9]

34. Stolen Private Information is often trafficked on the dark web, as is the case here. Law enforcement has difficulty policing the dark web due to this encryption, which allows users and criminals to conceal identities and online activity.

35. When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[10]

36. When the U.S. Department of Justice seized AlphaBay in 2017, it had more than 350,000 listings, many concerning stolen or fraudulent documents that could be used for identity theft. Other marketplaces, similar to the now-defunct AlphaBay, "are awash with [Private Information] belonging to victims from countries all over the world. One of the key challenges of protecting Private Information online is its pervasiveness. . . . Private Information about patients and the public is housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[11]

---

[9] CISA, *Ransomware Guide* (Sept. 2020), https://www.cisa.gov/sites/default/files/publications/CISA_MS-ISAC_Ransomware%20Guide_S508C.pdf (last visited Sept.29, 2026).

[10] IdentityForce, *Shining a Light on the Dark Web with Identity Monitoring* (Feb. 1, 2020), http://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last visited Sept. 29, 2026).

[11] Armor, *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited Sept. 29, 2026).

37. The Private Information of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.

38. For example, Experian reports that a stolen credit or debit card number can sell for $10 to $240 on the dark web, and bank details have a price range of $30 to $4,255.[12] Criminals can also purchase access to entire company data breaches.

39. Once Private Information is sold, it is often used to gain access to various areas of the victim's digital life, including bank accounts, social media, credit card, and tax details. This can lead to additional Private Information being harvested from the victim, as well as Private Information from family, friends and colleagues of the original victim.

40. According to the FBI's Internet Crime Complaint Center ("IC3") *Internet Crime Report 2024*, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $6.5 billion in losses to individuals and business victims.[13]

41. Further, according to the same report for 2019, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[14] Yet, Defendant failed to rapidly report the theft of their Private Information to Plaintiff and the Class.

42. Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

---

[12] Ben Luthi, *Here's What Your Data Sells for on the Dark Web*, Experian (June 30, 2025), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Sept. 29, 2026).

[13] *See* FBI, *Internet Crime Report 2024*, at 3, https://www.ic3.gov/AnnualReport/Reports/2024_IC3Report.pdf (last visited Sept. 29, 2026).

[14] *See* FBI, *2019 Internet Crime Report Released* (Feb. 11, 2020), https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120 (last visited Sept. 29, 2026).

43. Data breaches facilitate identity theft as hackers obtain consumers' Private Information and thereafter use it to siphon money from current accounts, open new accounts in the names of their victims, or sell consumers' Private Information to others who do the same.

44. For example, the United States Government Accountability Office ("GAO") noted in a June 2007 report on data breaches (the "GAO Report") that criminals use Private Information to open financial accounts, receive government benefits, and make purchases and secure credit in a victim's name.[15] The GAO Report further notes that this type of identity fraud is the most harmful because it may take some time for a victim to become aware of the fraud, and can adversely impact the victim's credit rating in the meantime. The GAO Report also states that identity theft victims will face "substantial costs and inconveniences repairing damage to their credit records . . . [and their] good name."[16]

45. The market for Private Information has continued unabated to the present, and in 2023 the number of reported data breaches in the United States increased by 78% over 2022, reaching 3205 data breaches.

46. The exposure of Plaintiff's and Class Members' Private Information to cybercriminals will continue to cause substantial risk of future harm (including identity theft) that is continuing and imminent in light of the many different avenues of fraud and identity theft utilized by third-party cybercriminals to profit off of this highly sensitive information.

**D. Defendant Violated Regulatory Requirements and Standards.**

47. Federal and state regulators have established security standards and issued recommendations to temper data breaches and the resulting harm to individuals. There are a

---

[15] *See* GAO, *Report to Congressional Requesters: Personal Information* (June 2007), at 9, https://www.gao.gov/assets/gao-07-737.pdf (last visited Sept. 29, 2026).

[16] *Id.*

number of state and federal laws, requirements, and industry standards governing the protection of Private Information.

48. For example, at least 24 states have enacted laws addressing data security practices that require businesses that own, license, or maintain Private Information about a resident of that state to implement and maintain "reasonable security procedures and practices" and to protect Private Information from unauthorized access.

49. Additionally, cybersecurity firms have promulgated a series of best practices that at a minimum should be implemented by sector participants including, but not limited to: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting of physical security systems; protecting against any possible communication system; and training staff regarding critical points.

50. The FTC has issued several guides for businesses, highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be considered for all business decision-making.[17]

51. In its 2016 *Protecting Personal Information: Guide for Business* publication, the FTC notes that businesses should safeguard the personal customer information they retain; properly dispose of unnecessary personal information; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to rectify security issues.[18]

---

[17] FTC, *Start With Security: A Guide for Business* (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited Sept. 29, 2026).

[18] FTC, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Sept. 29, 2026).

52. The guidelines also suggest that businesses use an intrusion detection system to expose a breach as soon as it happens, monitor all incoming traffic for activity indicating someone is trying to hack the system, watch for large amounts of data being siphoned from the system, and have a response plan in the event of a breach.

53. The FTC advises companies to not keep information for periods of time longer than needed to authorize a transaction, restrict access to private information, mandate complex passwords to be used on networks, utilize industry-standard methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.

54. The FTC has brought enforcement actions against companies for failing to adequately and reasonably protect consumer data, treating the failure to do so as an unfair act or practice barred by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders originating from these actions further elucidate the measures businesses must take to satisfy their data security obligations.

55. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

56. Defendant's failure to verify that it had implemented reasonable security measures constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

57. Furthermore, Defendant is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C. The Privacy

Rule and the Security Rule set nationwide standards for protecting health information, including health information stored electronically.

58. The Security Rule requires Defendant to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.[19]

59. Pursuant to HIPAA's mandate that Defendant follows "applicable standards, implementation specifications, and requirements . . . with respect to electronic protected health information," 45 C.F.R. § 164.302, Defendant was required to, at minimum, "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information," 45 C.F.R. § 164.306(e), and "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

60. Defendant is also required to follow the regulations for safeguarding electronic medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. § 17921, 45 C.F.R. § 160.103.

---

[19] HHS, *Summary of the HIPAA Security Rule*, https://www.hhs.gov/hipaa/for-professionals/security/laws-regulations/index.html (last visited Sept. 29, 2026).

61. Both HIPAA and HITECH obligate Defendant to follow reasonable security standards, respond to, contain, and mitigate security violations, and to protect against disclosure of sensitive Private Information. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); 45 C.F.R. § 164.530(f); 42 U.S.C. § 17902.

62. As alleged in this Complaint, Defendant violated HIPAA and HITECH. It has failed to maintain adequate security practices, systems, and protocols to prevent data loss, failed to mitigate the risks of a data breach, and failed to ensure the confidentiality and protection of PHI.

**E. Defendant Failed to Comply with Industry Practices.**

63. Various cybersecurity industry best practices have been published and should be consulted as a go-to resource when developing an organization's cybersecurity standards. The Center for Internet Security ("CIS") promulgated its Critical Security Controls, which identify the most commonplace and essential cyber-attacks that affect businesses every day and proposes solutions to defend against those cyber-attacks. All organizations collecting and handling Private Information, such as Defendant, are strongly encouraged to follow these controls.

64. Several best practices have been identified that a minimum should be implemented by companies like Defendant, including but not limited to securely configuring business software, managing access controls and vulnerabilities to networks, systems, and software, maintaining network infrastructure, defending networks, adopting data encryption while data is both in transit and at rest, and securing application software.

65. Defendant failed to follow these and other industry standards to adequately protect the Private Information of Plaintiff and Class Members.

**F. The Data Breach Caused Injury to Class Members and Will Result in Additional Harm Such as Fraud.**

66. Without detailed disclosure to the victims of the Data Breach, individuals whose Private Information was compromised by the Data Breach, including Plaintiff and Class Members, were unknowingly and unwittingly exposed to continued misuse and ongoing risk of misuse of their Private Information for months without being able to take available precautions to prevent imminent harm.

67. The ramifications of Defendant's failure to secure Plaintiff's and Class Members' data are severe.

68. Victims of data breaches are much more likely to become victims of identity theft and other types of fraudulent schemes. This conclusion is based on an analysis of four years of data that correlated each year's data breach victims with those who also reported being victims of identity fraud.

69. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[20] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[21]

70. Identity thieves can use Private Information, such as that of Plaintiff and Class Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud, such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a

[20] 17 C.F.R. § 248.201 (2013).

[21] *Id*.

fraudulent tax return using the victim's information to obtain a fraudulent refund.

71. As demonstrated herein, these and other instances of fraudulent misuse of the compromised Private Information has already occurred and are likely to continue.

72. Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[22]

73. The 2017 Identity Theft Resource Center survey evidences the emotional suffering experienced by victims of identity theft:

- 75% of respondents reported feeling severely distressed;
- 67% reported anxiety;
- 66% reported feelings of fear related to personal financial safety;
- 37% reported fearing for the financial safety of family members;
- 24% reported fear for their physical safety;
- 15.2% reported a relationship ended or was severely and negatively impacted by identity theft; and
- 7% reported feeling suicidal.[23]

---

[22] Erika Harrell, *Victims of Identity Theft*, U.S. Dept. of Justice Bureau of Justice Statistics (Sept. 2015, rev. Nov. 13, 2017), https://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited Sept. 29, 2026).

[23] Identity Theft Resource Center, *Identity Theft: The Aftermath 2017*, at 9–11, *archived at* https://web.archive.org/web/20211128052932/https://www.idtheftcenter.org/images/page-docs/Aftermath_2017.pdf (accessed Sep. 29, 2026).

74. Identity theft can also exact a physical toll on its victims. The same survey reported that respondents experienced physical symptoms stemming from their experience with identity theft:

- 48.3% of respondents reported sleep disturbances;
- 37.1% reported an inability to concentrate / lack of focus;
- 28.7% reported they were unable to go to work because of physical symptoms;
- 23.1% reported new physical illnesses (aches and pains, heart palpitations, sweating, stomach issues); and
- 12.6% reported a start or relapse into unhealthy or addictive behaviors.[24]

75. There may be a time lag between when harm occurs versus when it is discovered, and also between when private information is stolen and when it is used. According to the GAO Report regarding data breaches,

> law enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[25]

Thus, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.

**G. Plaintiff and Class Members Suffered Damages.**

76. As a direct and proximate result of Defendant's wrongful actions and inaction and the resulting Data Breach, Plaintiff and Class Members have already been harmed by the fraudulent misuse of their Private Information, and have been placed at an imminent, immediate,

---

[24] *Id*. at 12.

[25] GAO Report at 29, *supra* note 15, https://www.gao.gov/new.items/d07737.pdf.

and continuing increased risk of additional harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate both the actual and potential impact of the Data Breach on their lives. Such mitigatory actions include, *inter alia*, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, sorting through dozens of phishing and spam email, text, and phone communications, and filing police reports. This time has been lost forever and cannot be recaptured.

77. Defendant's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and Class Members' Private Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including the following:

a. theft and misuse of their personal and financial information;

b. the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals and misused via the sale of Plaintiff's and Class Members' information on the Internet's black market;

c. the untimely and inadequate notification of the Data Breach;

d. the improper disclosure of their Private Information;

e. loss of privacy;

f. ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

g. ascertainable losses in the form of deprivation of the value of their Private Information, for which there is a well-established national and international market;

h. the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the inconvenience, nuisance and annoyance of dealing with all such issues resulting from the Data Breach; and

i. nominal damages.

78. While Plaintiff's and Class Members' Private Information has been stolen, Defendant continues to hold Plaintiff's and Class Members' Private Information. Particularly because Defendant has demonstrated an inability to prevent a breach or stop it from continuing even after being detected, Plaintiff and Class Members have an undeniable interest in ensuring that their Private Information is secure, remains secure, is properly and promptly destroyed, and is not subject to further theft.

**H. Plaintiff's Experience.**

79. Plaintiff is a patient of Defendant.

80. Plaintiff provided Defendant with his Private Information as a condition of and in exchange for receiving services from Defendant.

81. Plaintiff provided his Private Information to Defendant on the condition that it be maintained as confidential and with the understanding that Defendant would employ reasonable safeguards to protect his Private Information.

82. Since the Data Breach, Plaintiff has experienced anxiety and increased concerns for

the loss of his privacy, as well as anxiety over the impact of cybercriminals accessing and using his Private Information.

83. Moreover, since the Data Breach Plaintiff has experienced a spike in spam calls, emails, and text messages, causing additional inconvenience.

84. Plaintiff would not have entrusted his Private Information to Defendant had he known about Defendant's lax data security and that it would not take reasonable steps to safeguard his Private Information.

85. Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

86. Plaintiff is very careful about sharing sensitive Private Information. He stores documents containing Private Information in safe and secure locations and has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source. Plaintiff would not have entrusted his Private Information to Defendant had he known of Defendant's lax data security policies.

87. As a direct and proximate result of the Data Breach, Plaintiff has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring his financial accounts and credit reports.

88. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. He has faced and faces a present and continuing risk of fraud and identity theft for his lifetime.

## CLASS ALLEGATIONS

89. Plaintiff brings this class action individually and, on behalf of the following Class:

**All persons residing in the United States whose Private Information was compromised in the Data Breach.**

90. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, any entities in which Defendant has a controlling interest, as well as the judge(s) presiding over this matter and the clerks, judicial staff, and immediate family members of said judge(s).

91. Plaintiff reserves the right to modify or amend the foregoing Class definitions before the Court determines whether certification is appropriate.

92. Numerosity: The members in the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable. The precise number of individuals affected has not yet been disclosed, but at a minimum, hundreds of people are members of the class.

93. Commonality and Predominance: Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. These common questions of law or fact include, *inter alia*:

a. Whether Defendant engaged in the conduct alleged herein;

b. Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class Members' Private Information from unauthorized access and disclosure;

c. Whether Defendant's computer systems and data security practices used to protect Plaintiff's and Class Members' Private Information violated federal and/or state laws, and/or Defendant's other duties discussed herein;

d. Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most

expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and Class Members;

e. Whether Defendant unlawfully shared, lost, or disclosed Plaintiff's and Class Members' Private Information;

f. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

h. Whether Plaintiff and Class Members suffered injury as a proximate result of Defendant's negligent actions or failures to act;

i. Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and Class Members' Private Information;

j. Whether Defendant breached duties to protect Plaintiff's and Class Members' Private Information;

k. Whether Defendant's actions and inactions alleged herein were negligent;

l. Whether Defendant were unjustly enriched by their conduct as alleged herein;

m. Whether an implied contract existed between Defendant and Plaintiff with respect to protecting Private Information and privacy, and whether that contract was breached;

n. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages or other relief, and the measure of such damages and relief;

o. Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

p. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

94. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of himself and all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

95. Typicality: Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had her Private Information compromised in the Data Breach. Plaintiff and Class Members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class Members.

96. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is an adequate representative of the Class and has no interests adverse to, or conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

97. Superiority: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class Members are relatively small compared to the burden and expense that

would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress from Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

98. Injunctive and Declaratory Relief: Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

99. Likewise, particular issues are appropriate for certification under Rule 24(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to: (a) whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, and safeguarding their Private Information; (b) whether Defendant failed to adequately monitor and audit their data security systems; and (c) whether Defendant failed to take reasonable steps to safeguard the Private Information of Plaintiff and Class Members.

100. All members of the proposed Class are readily ascertainable. Defendant has access to the names in combination with addresses and/or e-mail addresses of Class Members affected by the Data Breach. Indeed, upon information and belief, the impacted Class Members already have been preliminarily identified despite the fact that they have not yet been sent a letter notifying them of the Data Breach.

## CAUSES OF ACTION

## COUNT I
## NEGLIGENCE
## (On Behalf of Plaintiff and the Class Against Defendant)

101. Plaintiff restates and realleges paragraphs 1 through 100 above as if fully set forth herein.

102. Defendant requires its patients to submit non-public Private Information as a condition of receiving services.

103. Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of its business, which affects commerce.

104. Plaintiff and Class Members entrusted Defendant with their Private Information with the understanding that the information would be safeguarded.

105. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if their Private Information were wrongfully disclosed.

106. By assuming the responsibility to collect and store this data, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

107. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the Private Information.

108. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiff and Class Members,

on the other hand. That special relationship arose because Defendant was entrusted with their confidential Private Information as a condition of receiving services from Defendant.

109. Defendant also had a duty to exercise appropriate clearinghouse practices to remove its former patients' Private Information it was no longer required to retain pursuant to regulations.

110. Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and the Class of the Data Breach but failed to do so.

111. Defendant had and continues to have duties to adequately disclose that Plaintiff's and Class Members' Private Information within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

112. Defendant breached its duties and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of their networks and systems;

c. Allowing unauthorized access to Class Members' Private Information;

d. Failing to detect in a timely manner that Class Members' Private Information had been compromised;

e. Failing to remove former patients' Private Information it was no longer required to retain, pursuant to regulations; and

f. Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

113. Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

114. Defendant knew or should have known that its failure to implement reasonable data security measures to protect and safeguard Plaintiff's and Class Members' Private Information would cause damage to Plaintiff and the Class.

115. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

116. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

117. It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of corporate cyberattacks and data breaches.

118. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

119. Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing Private Information, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on its systems.

120. Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

121. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

122. Defendant's duties extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which have been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

123. But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and the Class, Plaintiff's and Class Members' Private Information would not have been compromised.

124. There is a close causal connection between Defendant's failure to implement security measures to protect Plaintiff's and Class Members' Private Information, and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. Private Information was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care by adopting, implementing, and maintaining appropriate security measures.

125. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to the following: (a) actual misuse of their compromised Private Information; (b) invasion of privacy; (c) lost or diminished value of Private Information; (d) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (e) loss of benefit of the bargain; (f) an increase in spam calls, texts, and/or emails (g) the continued and certainly increased risk to their Private Information, which remains unencrypted and available for unauthorized third parties to access in Defendant's possession and subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect it; (h) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives; (i) the present value of ongoing credit monitoring and identity defense services necessitated by the Data Breach; (j) the value of the unauthorized access to their Private Information permitted by Defendant; and (k) any nominal damages that may be awarded.

126. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses including nominal damages.

127. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

128. Defendant's negligent conduct is ongoing, in that it still possesses Plaintiff's and Class Members' Private Information in an unsafe and insecure manner.

129. Plaintiff and Class Members are entitled to injunctive relief requiring Defendant to strengthen its data security systems and monitoring procedures, submit to future annual audits of those systems and monitoring procedures, and continue to provide adequate credit monitoring to all Class Members.

## COUNT II
## NEGLIGENCE *PER SE*
## (On Behalf of Plaintiff and the Class Against Defendant)

130. Plaintiff restates and realleges paragraphs 1 through 100 above as if fully set forth herein.

131. Defendant had duties arising under the FTC Act and HIPAA to protect Plaintiff's and Class Members' Private Information.

132. Defendant breached its duties, pursuant to the FTC Act, HIPAA, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following: (a) failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information; (b) failing to adequately monitor the security of their networks and systems; (c) allowing unauthorized access to Class Members' Private Information; (d) failing to detect in a timely manner that Class Members' Private Information had been compromised; (e) failing to remove its former patients' Private Information it was no longer required to retain pursuant to regulations; and (f) failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

133. Defendant's violations of Section 5 of the FTC Act and HIPAA (and similar state statutes) constitute negligence *per se*.

134. Plaintiff and Class Members are consumers within the class of persons that Section 5 of the FTC Act and HIPAA were intended to protect.

135. The harm that has occurred is the type of harm the FTC Act and HIPAA were intended to guard against.

136. The FTC has pursued enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

137. Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

138. In addition, under state data security and consumer protection statutes such as those outlined herein, Defendant had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' Private Information.

139. Plaintiff and Class Members were foreseeable victims of Defendant's violations of the FTC Act and HIPAA, and state data security and consumer protection statutes. Defendant knew or should have known that its failure to implement reasonable data security measures to protect and safeguard Plaintiff's and Class Members' Private Information would cause damage to Plaintiff and the Class.

140. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to the following: (a) actual misuse of their compromised Private Information; (b) invasion of privacy; (c) lost or diminished

value of Private Information; (d) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (e) loss of benefit of the bargain; (f) an increase in spam calls, texts, and/or emails; and (g) the continued and certainly increased risk to their Private Information, which remains unencrypted and available for unauthorized third parties to access in Defendant's possession and subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect it.

141. As a direct and proximate result of Defendant's negligence *per se* Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

142. Finally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in their continued possession.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class Against Defendant)**

143. Plaintiff restates and realleges paragraphs 1 through 100 above as if fully set forth herein.

144. Plaintiff and Class Members were required deliver their Private Information to Defendant to obtain services from Defendant. Plaintiff and Class Members paid for services and provided their Private Information to Defendant with the assumption that a portion of Defendant's

earnings would be used to adequately safeguard their Private Information and would not have done so had they known that Defendant's data security practices were substandard.

145. Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

146. Defendant accepted possession of Plaintiff's and Class Members' Private Information for the purpose of performing its regular business operations.

147. Plaintiff and the Class entrusted their Private Information to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

148. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations (including FTC guidelines on data security) and were consistent with industry standards.

149. Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information, was the latter's obligations to (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class

Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

150. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

151. At all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

152. Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected in Defendant's privacy policy posted on its website.

153. Based on Defendant's conduct and representations, Plaintiff and Class Members provided their Private Information to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings on adequate data security. Defendant failed to do so.

154. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

155. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

156. Every contract in this State has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

157. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

158. Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach.

159. Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of Private Information and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

160. As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, including, but not limited to the following: (a) invasion of privacy; (b) theft of their Private Information; (c) lost or diminished value of Private Information; (d) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (e) loss of benefit of the bargain; (f) actual misuse of the compromised data consisting of an increase in spam calls, texts, and/or emails; (vii) nominal damages; and (g) the continued and certainly increased risk to their Private Information, which remains unencrypted and available for unauthorized third parties to access in Defendant's possession and subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect it.

161. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

162. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, strengthen its data security systems and monitoring procedures, submit to future annual audits of those systems and monitoring procedures, and immediately provide adequate credit monitoring to all Class Members.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class Against Defendant)**

163. Plaintiff restates and realleges paragraphs 1 through 100 above as if fully set forth herein.

164. This count is brought in the alternative to Plaintiff's breach of implied contract claim.

165. Plaintiff and Class Members conferred a benefit on Defendant by paying Defendant for its services, with the reasonable expectation that Defendant would safeguard their Private Information, which was used by Defendant in its regular course of business.

166. The monies Plaintiff and Class Members paid to or had withheld by Defendant were supposed to be used by Defendant, in part, to pay for the administrative and other costs of providing reasonable data security and protection to Plaintiff and Class Members.

167. Defendant failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class Members, and as a result Defendant was overpaid.

168. Under principles of equity and good conscience, Defendant should not be permitted to retain the money because Defendant failed to provide adequate safeguards and security

measures to protect Plaintiff and Class Members' Private Information that they paid for but did not receive.

169. Defendant wrongfully accepted and retained these benefits to the detriment of Plaintiff and Class Members.

170. Defendant's enrichment at the expense of Plaintiff and Class Members is and was unjust.

171. Plaintiff has no adequate remedy at law.

172. As a result of Defendant's wrongful conduct, as alleged above, Plaintiff and the Class are entitled to restitution and disgorgement of profits, benefits, and other compensation obtained by Defendant, plus attorneys' fees, costs, and interest thereon.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the class, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class representatives, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, nominal damages and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the class, seek appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard Private Information and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all claims herein so triable.

Dated: September 29, 2026

Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates (0085579)
Spencer D. Campbell (0103001)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
tcoates@msdlegal.com
scampbell@msdlegal.com

Mariya Weekes (*pro hac vice* forthcoming)
**MILBERG, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL, 33131
Tel: (786) 206-9057
mweekes@milberg.com

Jeff Ostrow (*pro hac vice forthcoming*)
**KOPELOWITZ OSTROW P.A.**
One West Law Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 332-4200
ostrow@kolawyers.com

*Counsel for Plaintiff and the Putative Class*